ORIGINAL

FILED

2009 APR -8 AM 11:24

CLERK, U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES

BY ______

ABE LUCA, ESQ. (235953)
Attorney
Freedom Watch, Inc.
9701 Wilshire Blvd.
Suite 1029, 10th Floor
Beverly Hills, CA 90212
Telephone: 310-651-3026
Facsimile: 310-651-3025

Of Counsel; **Larry Klayman, Esq.**
Chairman and General Counsel
Freedom Watch, Inc.
(Subject to Pro Hac Vice Entry)

Attorneys for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BY FAX

| | | |
|---|---|---|
| Jacqueline Williams in the Right of and for the Benefit of American International Group and herself and Other Shareholders of the Class<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD M. LIDDY,<br>ROBERT B. WILLUMSTAD,<br>MARTIN J. SULLIVAN,<br>MAURICE R. GREENBERG,<br>PAULA R. REYNOLDS,<br>WIN J. NEUGER, EDMUND S.W. TSE,<br>LOUIS P. IGLESIAS, JOSEPH BOREN,<br>ANASTASIA D. KELLY,<br>MORRIS W. OFFIT, MICHAEL SUTTON,<br>RICHARD C. HOLBROOKE,<br>JAMES ORR III, MARTIN FELDSTEIN, PH.D.,<br>VIRGINIA ROMETTY,<br>STEPHEN BOLLENBACH, | ) | CASE NO. CV09-2108<br><br>HONORABLE A.H. MATZ<br><br>CLASS ACTION<br>VERIFIED DERIVATIVE<br>AND SHAREHOLDER<br>AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED |

SUZANNE JOHNSON, )
DENNIS DAMMERMAN, AND )
TIMOTHY GEITHNER, )
HENRY PAULSON, )
CHRISTOPHER COX, AND )
AMERICAN INTERNATIONAL GROUP )
)
Defendants. )
)

## VERIFIED SHAREHOLDER DERIVATIVE AND SHAREHOLDER AMENDED COMPLAINT

Plaintiff, by its attorneys, submits this Shareholder Derivative Complaint (the "Complaint") against the Defendants named herein.

## STATEMENT OF THE FACTS

1. Plaintiff brings this shareholder derivative and shareholder action on behalf of American International Group ("AIG" or the "Company") against certain of its current and former officers and directors for breach of fiduciary duty, gross mismanagement, corporate waste and violations of section 14(a) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"). From December 8th, 2000 to the present (the "Relevant Period"), the Defendants, acting in concert, jointly and severally, have seriously undermined and damaged AIG's financial health and valuable past reputation by systematically causing and/or permitting the Company to engage in a litany of highly risky, detrimental and reckless business dealings, activities and transactions that have caused the Company to verge on bankruptcy and which have required in excess of $190 billion dollars to date of government provided monies to prevent total Company failure.

2. Because of negligence, gross negligence, recklessness, and mismanagement and/or intentional misconduct by each of the Defendants, acting in concert, jointly and severally, the Company has lost and squandered over $200 billion dollars in shareholders equity, bonuses and

dividends during Relevant Period from 2000 to present. In December 2000, AIG had a market value of approximately $217 billion dollars. Today it has a market value of approximately $3.5 billion dollars, a net decline of $214.5 billion dollars based on the market capitalization rate formula.

3. AIG, acting in concert with the individual Defendants, engaged in an unprecedented and financially unsound frequency and value of credit-default swap ("CDS") derivative contracts for the collateralized debt obligations ("CDOs") derivative market, thus exposing the company to enormous risk, and ultimately billions of dollars in material losses, most of which were paid out of shareholder investments and government provided monies at the expense of the Company's shareholders and American taxpayers. Examples of these CDS contracts and their associated losses include the following counter-parties:

(a) Goldman Sachs - $12.9 billion

(b) Merrill Lynch Bank of America - $12 billion

(c) Societe Generale - $11.9 billion

(d) Deutsche Bank - $11.8 billion

(e) United Bank of Switzerland - $5 billion

4. The type of CDO derivative market, which AIG entered into as an insurance counter-party through its CDS contracts, developed as a result of a spike during the Relevant Period in sub-prime mortgages and the perceived need for large institutions to alleviate risk. A CDO is a type of collateralized asset backed security, in AIG's case, the majority of which were tied to sub-prime mortgage bonds. By their very nature, these derivatives contracts are extremely risky and can have the potential for extremely high profits, or extremely high losses. AIG made enormous profits in a very short period of time by underwriting insurance contracts against the

default of these high-risk CDO derivatives, but the amount of risk was inordinately and disproportionately higher than the corresponding profits earned, and this proved to be too much for the Company to bear, ultimately.

5. After AIG posted a record breaking $62 billion dollar loss for the 4th quarter of 2008, the Defendants, each and every one of them, incredibly paid out $165 million dollars in bonuses to its executives in March of 2009 and $55 million dollars in December of 2008 for this poor performance, and also paid out dividends when this was not reasonable or warranted under the circumstances. The following facts are known at this time about the bonuses:

(a) 400 employees each received between $1000 and $6.5 million dollars;

(b) seven executives at the financial products unit, the same unit that was responsible for underwriting the costly CDS derivative contracts and losing billions of dollars, received more than $3 million each, in bonuses;

(c) the bonuses were allegedly for retention, in part, and also performance based, but it has become clear that this was not the reason for the bonuses; rather looting of shareholder and government assets was the motivation

6. The Company continued to pay out dividends to shareholders during the Relevant Period, even during the tumultuous 2008 year, when it became clear that AIG was in a position to lose a significant amount of money on its CDS contracts. Rather than cutting or not paying dividends, AIG raised its dividend payments to shareholders in the 3rd quarter of 2007 from .165 per share to .20 per share, resulting in the loss of operating capital for the Company in the amount of over $500 million dollars for each quarter after the 3rd quarter of 2007 through 2008. This was a time when the Company should have been increasing, rather than decreasing, its reserves to cover potential losses that were evident due to AIG's tremendous risk exposure through its CDS

contracts. The decision to pay out these dividends at the increased rate, shows that the Defendants were either trying to misrepresent the financial stability of the Company by continuing to pay out dividends, or the Defendant's were derelict in their management and oversight of the Company by doing so as well as other illegal and unethical and improper practices.

7. The Company violated the trust of its shareholders and employees by making unreasonably optimistic if not misleading and false future assessments in 2006 and 2007 earnings reports, and misrepresenting actual knowledge of the company's predicament by downplaying the Company's exposure to future losses. Defendants misrepresentations and omissions were made in reckless disregard for the truth and the concealment of extraordinary amount of risk exposure could not have been discovered through reasonable diligence by the typical shareholder. For example, in the 4th quarter 2007 earnings press conference, AIG states:

(a) "Based upon its most current analyses, AIG believes that any credit impairment losses realized over time by AIGFP (American International Group Financial Products Corp) will not be material to AIG's consolidated financial condition, although it is possible that realized losses could be material to AIG's consolidated results of operations for an individual reporting period. Except to the extent of any such realized credit impairment losses, AIG expects AIGFP's unrealized market valuation losses to reverse over the remaining life of the super senior credit default swap portfolio."

8. The sheer scale of wealth destruction and loss of equity value that occurred under each of the Defendants' watch demonstrates that there was significant negligence, gross negligence, recklessness and/or intentional misconduct on account of senior management, executive

leadership, and the board of directors and officers, in failing to prevent AIG's steep decline towards bankruptcy.

9. Motivated by greed and quick profits, each of the Defendants, acting in concert, jointly and severally, have deliberately, repeatedly, and systematically failed to exercise independent effective judgment, oversight, and necessary restraint of AIG's disastrous business activities, including executive compensation bonuses and engaging in hundreds of billions of dollars in risky derivatives contracts, which subsequently cost the shareholders of the Company in excess of $200 billion dollars. During this time of unprecedented wealth destruction for AIG shareholders, each of the Defendants were compensated generously by way of handsome salaries and exorbitant bonuses, despite their misconduct.

10. The Company and its shareholders, which now include not only the Plaintiff, other private shareholders but also now U.S. taxpayers, have suffered irreparable damage to their investments and the Company's reputation, and the Company will continue to suffer a loss of goodwill and its ability to conduct future operations as a result of the illegal activities of each of the Defendants, acting jointly and severally.

11. The Defendants, each of them jointly and severally, acted in concert with and had the consent and participation of Henry Paulson ("Paulson"), former Secretary of the U.S. Department of the Treasury outside of the scope of his government authority and duties and responsibilities and in violation of the constitutional rights of the shareholders of AIG, in their acts of covering up and concealing from shareholders and the general public, information relating to the extremely precarious and dire financial position that AIG was in during the Relevant Period. Paulson then effectively used AIG as a conduit for taxpayer bailout funds to ensure that select domestic banks, such as Goldman Sachs and Bank of America, were able to

stay afloat, by essentially guaranteeing AIG's CDS contractual obligations to these financial institutions.

12. The Defendant Paulson worked at Goldman Sachs from 1974 and served as its CEO from 1999 to 2006, during which time his net worth was estimated at one point to be over $700 million dollars. During this period, Paulson intentionally coerced the SEC to do away with many of its governmentally mandated regulations of the financial industry with the help of the Defendant Christopher Cox ("Cox"), then Chairman of the Securities and Exchange Commission ("SEC"). For example, Paulson and Cox pushed successfully for the dissolution of the risk management office, a part of the SEC that was conducting oversight into the banking industry. These actions by Paulson and Cox were directly responsible for creating the business environment that allowed such institutions as Goldman Sachs, Bank of America, and others to profit immensely by creating a market for sub-prime derivatives such as CDOs, and to insure these risky derivatives with AIG through the CDS derivatives, ultimately leading to catastrophic failure for AIG and the broader American financial system. By the time the financial markets began to collapse in 2008, Paulson had since taken up the office of U.S. Treasury Secretary under President George W. Bush, and was in a position to ensure that AIG did not default on its obligations to its counterparties, Goldman Sachs included, by providing AIG with hundreds of billions of taxpayer dollars that were in turn handed over to domestic and financial institutions, such as Goldman Sachs, in order to honor these contractual CDS obligations.

13. During the Relevant Period, Defendant Timothy Geithner ("Geithner") was the President of the Federal Reserve Bank of New York ("NY Fed") beginning in 2003, and subsequently became the Vice Chairman of the Federal Open Market Committee. According to the NY Fed's website, "The New York Fed's supervisory activities are designed to ensure a safe and sound

banking system" and it also states "like the other Federal Reserve banks, the New York Fed is responsible for enforcing laws and establishing rules to protect banking customers in its region."

14. During the Relevant Period as NY Fed President, Geithner not only failed to live up to his responsibilities in this assigned role as regulatory agent and overseer of the banking system, but he actively promoted a business environment contrary to the best interests of the general public, that would allow large institutions such as Citigroup, Bank of America and others to over-leverage themselves, and take on enormous risk by increased issuance of CDOs, which ultimately caused these companies that he was supposed to be regulating to fail. An example of this was in 2006, when Geithner lifted restrictions on Citigroup that required the company to report quarterly risk management reports and when he lifted other restrictions that prevented the company from making acquisitions of other companies. After these restrictions were lifted, Citigroup was effectively free from the significant oversight that would have prevented it from engaging in the reckless business practices that led to its failure and indirectly contributed to the failure of AIG.

15. There has been a persistent and systematic effort by the Bush administration and Defendant Paulson, which has continued under the Obama administration and Defendant Geithner, to enrich the banking and corporate elite, often indistinguishable from the government elite, with gargantuan profits and then to cover up these acts by using U.S. taxpayer provided bailouts to ensure that these financial institutions stay afloat, all of which has adversely affected the hundreds of thousands of shareholders who own AIG stock and the millions of other Americans who own trillions of dollars worth of other commercial securities, while the Defendants and other beneficiaries such as Paulson, Cox, and Geithner have benefited, as a result of their illegal schemes, through multi-million dollar salaries and bonuses.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 in that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

18. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

19. Plaintiff brings this action on behalf of AIG pursuant to Rule 23.1 of the Federal Rules of Civil Procedure based on principles of state and federal law which prohibit breach of the federal securities laws by officers and directors of public corporations, breach of the fiduciary duty of corporate candor by corporate fiduciaries and the misappropriation of corporate information which was not available to the public investors. This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

20. Venue is proper in this Court because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, occurred in this district where Defendants do business and at all material times have done business in this district. Defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## THE PARTIES

21. Plaintiff, and members of the Class, have been a holders of AIG common stock during the Relevant Period. Lead Plaintiff resides in Missouri.

22. Defendant AIG is a Delaware corporation with its principal place of business in New York, New York. American International Group, Inc., through its subsidiaries, provides insurance and financial services in the United States and internationally. It operates in four segments: General Insurance, Life Insurance and Retirement Services, Financial Services, and Asset Management.

(a) AIG stock trades on the NYSE. As of December 31, 2008, AIG had approximately 2.69 billion shares of common stock outstanding owned by thousands of shareholders. AIG is named in this Complaint as a defendant solely in a derivative capacity and this shareholder derivative action is on its behalf.

(b) AIG, while formally incorporated in Delaware, it has few business operations, assets and/or employees located there. The majority of AIG's operations, including its headquarters and principal place of business, are located in New York, at address 70 Pine Street, New York, NY 10270.

23. Defendant Edward M. Liddy ("Liddy") is and has been the Chief Executive Officer ("CEO") of AIG since September 2008 and is the current Chairman of the Board of Directors (the "Board"). Upon information and belief, Defendant Liddy resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

24. Defendant Robert B. Willumstad ("Willumstad") was the Chairman of the Board from 2006 to 2008 and CEO of AIG from June 2008 through September 2008. Upon information and belief, Defendant Willumstad resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

25. Defendant Martin J. Sullivan ("Sullivan") has been a director of AIG throughout the Relevant Period and served as CEO of AIG from March 2005 through June 2008, taking with him over $25 million dollars in severance after presiding over the company during the Relevant Period during which the company engaged in the behavior that has led it to its current state. Upon information and belief, Defendant Sullivan resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

26. Defendant Maurice R. Greenberg ("Greenberg") was the CEO of AIG from 1968 through June 2005, when he stepped down amid a major accounting scandal. Upon information and belief, Defendant Greenberg resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

27. Defendant Paula R. Reynolds ("Reynolds") is and has been a director of AIG since October 2008 and serves as Vice Chairman and Chief Restructuring Officer of AIG. Upon information and belief, Defendant Reynolds resides outside of California and her address is unknown. She is therefore being served at AIG headquarters in New York.

28. Defendant Win Jay Neuger ("Neuger") is and has been a director AIG since 1995 and currently serves as Executive Vice President and Chief Investment Officer of AIG. Upon information and belief, Defendant Neuger resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

29. Defendant Edmund S.W. Tse ("Tse") is and has been a director of AIG since 2004 and currently serves as Senior Vice Chairman of Life Insurance, Head of AIGs Worldwide Life Insurance Operations, Director, Chairman of American International Assurance Company Ltd and Chief Executive Officer of American International Assurance Company Ltd, AIG. Upon

information and belief. Defendant Tse resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

30. Defendant Louis P. Iglesias ("Iglesias") is and has been a director of AIG since 2008 and currently serves as Chairman of AIG Risk Management Group and Chief Executive Officer of AIG Risk Management Group. Upon information and belief, Defendant Iglesias resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

31. Defendant Joseph Boren ("Boren") is and has been a director of AIG and currently serves as Chairman of AIG Environmental and Chief Executive Officer of AIG Environmental. Upon information and belief, Defendant Boren resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

32. Defendant Anastasia D. Kelly ("Kelly") is and has been a director of AIG since 2009 and currently serves as Vice Chairman of Human Resources, Vice Chairman of Corporate Communications & Corporate Affairs, Vice Chairman of Legal, Vice Chairman of Corporate Affairs, Executive Vice President, Senior Regulatory & Compliance Officer, and General Counsel. Upon information and belief, Defendant Kelly resides outside of California and her address is unknown. She is therefore being served at AIG headquarters in New York.

33. Defendant Morris W. Offit ("Offit") is and has been an Independent Director of AIG since 2005 and currently serves as Chairman of Finance Committee, Member of Audit Committee and Member of Public Policy & Social Responsibility Committee, AIG. Upon information and belief, Defendant Offit resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

34. Defendant Michael Sutton ("Sutton") is and has been an Independent Director of AIG since 2005 and now serves as Independent Director, Chairman of Audit Committee, Member of First Special Litigation Committee and Member of Regulatory, Compliance & Legal Committee of AIG. Upon information and belief, Defendant Sutton resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

35. Defendant Richard Holbrooke ("Holbrooke") is and has been an Independent Director of AIG since 2001 and now serves as Independent Director and Chairman of Public Policy & Social Responsibility Committee of AIG and is also the Obama administration's envoy to Afghanistan and Pakistan. Upon information and belief, Defendant Holbrooke resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

36. Defendant James Orr III ("Orr") is and has been an Independent Director of AIG since 2006 and now serves as Director, Chairman of Compensation & Management Resources Committee and Member of Nominating & Corporate Governance Committee of AIG. Upon information and belief, Defendant Orr resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

37. Defendant Martin Feldstein, Ph.D. ("Feldstein") is and has been an Independent Director of AIG since 1987 and now serves as Independent Director, Member of Regulatory, Compliance & Legal Committee and Member of Finance Committee of AIG and he presently serves on President Obama's Economic Recovery Advisory Board. Upon information and belief, Defendant Feldstein resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

38. Defendant Virginia Rometty ("Rometty") is and has been an Independent Director of AIG since 2006 and now serves as Director and Member of Compensation & Management

Resources Committee. Upon information and belief, Defendant Rometty resides outside of California and her address is unknown. She is therefore being served at AIG headquarters in New York.

39. Defendant Stephen Bollenbach ("Bollenbach") is and has been an Independent Director of AIG since 2008 and now serves as Lead Independent Director and Member of Audit Committee of AIG. Upon information and belief, Defendant Bollenbach resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

40. Defendant Suzanne Johnson ("Johnson") is and has been an Independent Director of AIG since 2008. Upon information and belief, Defendant Johnson resides outside of California and her address is unknown. She is therefore being served at AIG headquarters in New York.

41. Defendant Dennis Dammerman ("Dammerman") is and has been an Independent Director of AIG since 2008. Upon information and belief, Defendant Dammerman resides outside of California and his address is unknown. He is therefore being served at AIG headquarters in New York.

42. Defendant Henry M. Paulson Jr. ("Paulson") served as the CEO of Goldman Sachs from 1999 to 2006 and then served as the Secretary of the Treasury from 2006 to 2009 in the Bush administration. Upon information and belief, Defendant Paulson resides in the Washington D.C. metropolitan area.

43. Defendant Timothy F. Geithner ("Geithner") served as President of the Federal Reserve Bank of New York and as Vice-Chairman of the Federal Open Market Committee from 2003 to 2009 and he presently serves as the Secretary of the Treasury in the Obama administration. Upon

information and belief, Defendant Geithner resides in Washington D.C. as is therefore being served at his office at the United States Department of the Treasury.

44. Defendant Christopher Cox ("Cox") was Chairman of the Securities and Exchange Commission from 2005 to 2009. Upon information and belief, Defendant Cox resides in the Washington D.C. metropolitan area.

**OBLIGATIONS AND DUTIES OF EACH OF THE DEFENDANTS**

45. By reason of their positions as directors, officers, and/or fiduciaries of the Company and because of their ability to control the business, corporate and financial affairs of the company, each of the Defendants owed the Company and its shareholders the duty to exercise due care and diligence in the management and administration of the affairs of the Company and in the use and preservation of its property and assets; the duty of loyalty, to put the interests of the Company above their own financial interests; and the duty of candor, including full and candid disclosure of all material facts related thereto. Further, Defendants, each and every one of them, owed a duty to the Company and its shareholders to ensure that the Company operated in compliance with all federal and state laws, rules, regulations and that the Company was not engaged in any unsafe, unsound, or illegal business practices. The conduct of the Defendants complained of herein involves knowing violations of their duties as directors of the Company, and the absence of good faith on their part, which Defendants were aware or should have been aware, posed a risk of serious injury to the Company.

To discharge these duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, controls, and financial and corporate affairs of the Company. By virtue of this obligation of ordinary care and diligence, Defendants were required, among other things, to:

(a) manage, conduct, supervise, and direct the employees, businesses and affairs of the Company in accordance with laws, rules and regulation, and the charter and by-laws of the Company;

(b) neither violate no knowingly or recklessly permit any officer, director or employee of the Company to violate applicable laws, rules and regulations, and to exercise reasonable control and supervision over such officers and employees; ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by the Company;

(c) remain informed as to how the Company was, in fact, operating and upon receiving notice or information of unsafe, imprudent or unsound practices, to make reasonable investigation in connection therewith and to take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to gather and report information internally, to allow Defendants to perform their oversight function properly to prevent the use of non-public corporate information for personal profit;

(d) supervise the preparation, filing and/or dissemination of any SEC filing, press releases, audits, reports or other information disseminated by the Company, and to examine and evaluate any reports of examinations or investigations concerning the practices, products or conduct of officers of the Company, and to make full and accurate disclosure of all material facts, concerning *inter alia*, each of the subjects and duties set forth above; and

(e) preserve and enhance the Company's reputation as befits a public corporation and to maintain public trust and confidence in the Company as a prudently managed institution fully capable of meeting its duties and obligations.

## CLASS ACTION ALLEGATIONS

46. Lead Plaintiff brings this action as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired securities issued by AIG and its subsidiaries and that traded on an efficient market, during the Relevant Period , and were damaged thereby (the "Class"). Excluded from the Class are:

(i) Defendants;

(ii) members of the immediate family of each Individual Defendant;

(iii) any person who was an officer or director of AIG

(iv) any firm, trust, corporation, officer, or other entity in which any Defendant has or had a controlling interest;

(v) any person who participated in the wrongdoing alleged herein;

(vi) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any such excluded party.

47. The Class is so numerous that joinder of all Class members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Throughout the Relevant Period, AIG's common stock was actively traded on the NYSE, which is an efficient market. As of December 31, 2008, there were over 2.69 billion shares of AIG common stock outstanding. While the exact number of Class members is unknown to

Plaintiff at this time, and can only be determined through appropriate discovery, Plaintiff believes that Class members number in at least the hundreds of thousands.

48. The claims of Plaintiffs are typical of the claims of other Class members. Plaintiffs and all Class members acquired their AIG securities shares on the open market or pursuant to the Offerings and sustained damages as a result of Defendants' conduct alleged herein in violation of the federal securities laws.

49. Plaintiffs have no interests that are contrary to or in conflict with those of the Class.

50. A class action is superior to other available methods for the fair and efficient adjudication of the Defendants actions. Because the damages suffered by individual Class members may be relatively small compared to the damage to the shareholders and the Company as a whole, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the wrongful conduct alleged herein.

51. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class predominate over questions that may affect individual Class members. Such common questions of law and fact, include, among others:

(a) Whether Defendants violated the federal securities laws;

(b) Whether documents, press releases and public statements made by the Defendants during the Relevant Period concerning the Company's financial and operational position, including statements concerning the Company's financial results, contained misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(c) Whether AIG's SEC filings issued during the Class Period which contained financial information (*i.e.* its Forms 10-K, 10-Q, 8-K, and S-3) contained untrue or materially misleading statements or material omissions of fact;

(d) Whether the market prices of AIG securities during the Class Period were artificially inflated due to the material misrepresentations complained of herein;

(e) Whether with regard to claims under the Exchange Act, certain of the Defendants knew or recklessly disregarded that their statements were false and misleading;

(f) Whether the Offering Documents (as defined below) contained material misstatements or omitted to state material information; and

(g) Whether Class members and the Company have sustained damages and, if so, the appropriate measure thereof.

52. Lead Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

53. The names and addresses of record owners of AIG securities purchased on or traceable to the Offerings and during the Class Period are available from records maintained by AIG or its transfer agent. Notice may be provided to such record owners via first class mail, using techniques and a form of notice similar to that customarily used in securities class actions.

**DERIVATIVE ACTION AND DEMAND FUTILITY ALLEGATIONS**

54. Pursuant to California Corporations Code section 800, Plaintiff alleges that he was a shareholder of record at the time of the transactions or any part thereof of which plaintiff complains.

55. Pursuant to California Corporations Code section 800, Plaintiff has made an effort to secure from the board such action as the plaintiff desires, by emailing to the board a letter, dated 3/18/09, requesting that the board file suit over the legal wrongs complained herein.

## COUNT I

### Against All Defendants for Breach Of Fiduciary Duty

56. Plaintiff and other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

57. The Defendants, each of them jointly and severally, owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

58. The Defendants, each of them jointly and severally, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

59. Each of the Defendants authorized, or by abdication of duty permitted the extremely risky derivative security activities complained of herein. These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's and its shareholders' corporate interests.

60. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, each of them jointly and severally have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business, and good will.

61. The Company has been directly and substantially injured by reason of the Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the Company. Plaintiff,

and other Class members, as shareholders and representatives of the Company, seek damages and other relief for the Company, in an amount to be proven at trial.

**COUNT II**

**Against All Defendants for Gross Mismanagement**

62. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

63. By their actions alleged herein, the Defendants, each and every one of them, jointly and severally, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

64. As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, the Company and its shareholders have sustained and continue to sustain significant damages in the billions of dollars.

65. As a result of the misconduct and breaches of duty alleged herein, the Defendants, each and every one of them, jointly and severally, are liable to the Company.

**COUNT III**

**Against All Defendants for Waste of Corporate Assets**

66. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

67. By engaging in the wrongdoing alleged herein, the Defendants, each and every one of them, jointly and severally, wasted corporate assets by, among other things, engaging in extensive investment activities involving extremely risky derivative securities, damaging the

goodwill and reputation of the Company, and exposing the Company to civil and criminal liability, for which they are liable.

68. As a direct and proximate result of Defendants' wrongful conduct, the Company and its shareholders have suffered damages in an amount to be proven at trial.

**COUNT IV**

**Additional Violation of Federal Securities Laws**

69. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

70. The Defendants, each and every one of them, acting jointly and severally, misrepresented and/or omitted material facts regarding AIG's consolidated financial condition, regarding the true size and scope and the nature of the risk exposure that it faced. This violates section 14(e) of the Securities Exchange Act of 1934, which states, "It shall be unlawful for any person to make any untrue statement of a material fact or to omit to state any material fact necessary in order to make the statements made, in the light of the circumstance under which they are made, not misleading,..."

71. As a direct and proximate result of Defendants' breaches of duty alleged herein, the Company and its shareholders have sustained and continue to sustain significant damages in the billions of dollars.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

72. Against each of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, gross mismanagement, and waste of corporate assets in an amount in excess of $200 billion dollars.

73. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including declaring the improper compensation awards complained of herein to be null and void; and attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of the Company has an effective remedy;

74. Awarding to the Company restitution from the Defendants, each and every one of them, jointly and severally, and ordering disgorgement of all profits, benefits, bonuses, dividends, perks, and other compensation obtained by the Defendants as a result of the conduct alleged herein.

75. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

76. Granting such other and further relief as the Court deems just and proper, such as removing all of the director Defendants from further control of AIG.

## COUNT V

## Against the Management Defendants for Unjust Enrichment and Breach of the Duty of Loyalty

77. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

78. As a result of lavishing bonuses, dividends, benefits and perks and disproportionately high compensation for themselves and appointed executives, Defendants have and will to be unjustly enriched at the expense of and to the detriment of the Company.

79. Accordingly, this Court should order the Defendants to disgorge all profits, dividends bonuses, benefits, and other compensation obtained by the Defendants.

SHAREHOLDERS CLASS ACTION ON THEIR OWN BEHALF

## COUNT VI

**Shareholders Against Defendant AIG for Breach Of Fiduciary Duty**

80. Plaintiff and other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

81. The Defendant AIG owes its shareholders fiduciary obligations. By reason of their fiduciary relationships, AIG owed and owes the shareholders the highest obligation of good faith, fair dealing, loyalty, and due care.

82. The Defendant AIG violated and breached its fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

83. The Defendant AIG authorized, or by abdication of duty permitted the extremely risky derivative security activities complained of herein. These actions were not a good faith exercise of prudent business judgment to protect and promote its shareholders' corporate interests.

84. As a direct and proximate result of the Defendant AIG's breaches of its fiduciary duties, AIG has caused and will continue to cause its shareholders to suffer substantial monetary damages as a result of the wrongdoing described herein, as well as further and even greater damage in the future, including damage to the Company's reputation, business, and good will.

85. The Company has been directly and substantially injured by reason of the Defendant AIG's intentional breach and/or reckless disregard of their fiduciary duties to the shareholders. Plaintiff and other Class members seek damages and other relief for the Defendant AIG, in an amount to be proven at trial but in an amount in excess of $200 billion dollars.

## COUNT VII

**Shareholders Against Defendant AIG for Gross Mismanagement**

86. Plaintiff and other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

87. By their actions alleged herein, each of the Defendants and AIG, abandoned and abdicated its responsibilities and fiduciary duties with regard to prudently managing the assets and business of the shareholders in a manner consistent with the operations of a publicly held corporation.

88. As a direct and proximate result of each of the Defendant's and AIG's gross mismanagement and breaches of duty alleged herein, the shareholders have sustained and continue to sustain significant damages in the billions of dollars.

89. As a result of the misconduct and breaches of duty alleged herein, each of the Defendants and AIG, jointly and severally, are liable to the shareholders.

**COUNT VIII**

**Shareholders Against Defendant AIG for Waste of Corporate Assets**

90. Plaintiff and other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

91. By engaging in the wrongdoing alleged herein, each of the Defendants and AIG wasted corporate assets by, among other things, engaging in extensive investment activities involving extremely risky derivative securities, damaging the goodwill and reputation of the Company, and exposing the Company to civil and criminal liability, for which they are liable.

92. As a direct and proximate result of each of the Defendants' and AIG's wrongful conduct, jointly and severally, Plaintiff and other Class member shareholders have suffered damages in an amount to be proven at trial, but in an amount in excess of $200 billion dollars.

## COUNT IX

### Additional Violation of Federal Securities Laws

93. Plaintiff and the other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

94. Each of the Defendants and AIG, misrepresented and/or omitted material facts regarding AIG's consolidated financial condition, regarding the true size and scope and the nature of the risk exposure that it faced. This violates section 14(e) of the Securities Exchange Act of 1934, which states, "It shall be unlawful for any person to make any untrue statement of a material fact or to omit to state any material fact necessary in order to make the statements made, in the light of the circumstance under which they are made, not misleading,..."

95. As a direct and proximate result of each of the Defendant's AIG's breaches of duty alleged herein, the shareholders have sustained and continue to sustain significant damages in the billions of dollars.

## COUNT X – BIVENS FOURTH AMENDMENT VIOLATIONS

96. Plaintiff and the other Class members incorporate by reference each and every allegation set forth above, as though fully set forth herein.

97. As a United States Citizen, he is entitled to the protections of the Fourth Amendment and is entitled to be protected against unreasonable government searches and seizures.

98. The acts of the Defendants, Geithner, Paulson, and Cox, constitute under the Fourth Amendment a seizure, that is a deprivation and unconstitutional taking of the property rights, namely the value of the shares themselves, owned by Plaintiff and the rest of the Class members, under the Fourth Amendment of the U.S. Constitution.

99. Defendants acted knowingly, willfully and/or maliciously, and with the specific intent to deprive the Plaintiff and the Class members of their constitutional rights, and/or with deliberate indifference to their constitutional rights.

100. Upon information and belief, this deprivation of rights has directly and proximately caused the Plaintiff and the Class members to suffer substantial economic and non-economic damages in excess of $75,000.00.

101. Defendants acted under color of their authority to deprive the Plaintiff and the Class members of their rights.

102. Defendants' conduct violated clearly established rights of which a reasonable person would have known.

103. There are no other effective means to vindicate the Plaintiff's and the Class members' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

104. Against the Company and each of the Defendants, jointly and severally, for the amount of damages sustained by the Shareholders as a result of the Defendants' breaches of fiduciary duties, gross mismanagement, and waste of corporate assets, causing a decrease in Shareholders Equity in an amount in excess of $200 billion dollars.

105. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including declaring the improper compensation awards complained of herein to be null and void; and attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff and other members of the Class have an effective remedy;

106. Awarding to the Plaintiff and the other Class member shareholders restitution from the Defendant AIG and all of the Defendants, jointly and severally, and ordering disgorgement of all profits, benefits, bonuses, dividends, perks and other compensation obtained by each of the Defendants as a result of the conduct alleged herein.

107. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

108. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Abe Luca Es
ABE LUCA, ESQ. (235953)
Attorney
Freedom Watch, Inc.
9701 Wilshire Blvd.
Suite 1029, 10th Floor
Beverly Hills, CA 90212
Telephone: 310-651-3026
Facsimile: 310-651-3025

Of Counsel; **Larry Klayman, Esq.**
Chairman and General Counsel
Freedom Watch, Inc.
(Subject to Pro Hac Vice Entry)

Attorneys for the Plaintiff

## VERIFICATION

I, JACQUELINE WILLIAMS, am a citizen of the United States of America and am a resident of the State of Missouri, and have been a shareholder of American International Group common stock. I have read the foregoing Verified Complaint and declare under penalty of perjury under the laws of the United States of America that the foregoing factual averments are true and correct to the best of my knowledge and belief.

Jacqueline Williams

Jacqueline Williams